**Affirmed and Opinion filed May 21, 2019.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

### NO. 14-18-01057-CV

## IN THE INTEREST OF T.L.E. A/K/A T.E., AND D.V.E A/K/A A.D.E., CHILDREN

**On Appeal from the 315th District Court
Harris County, Texas
Trial Court Cause No. 2017-04339J**

## OPINION

The issues in this case involve whether the trial court's findings to terminate a father's parental rights are supported by legally- and factually-sufficient evidence. This accelerated appeal arises from a final order in which, after a bench trial, the trial court terminated the parental rights of F.G.M. (Mother) and S.C.E. (Father) with respect to their children, T.L.E. (Ted) and D.V.E. (Dale),[1] and appointed the Department of Family and Protective Services to be the children's sole managing

---

[1] To protect the minors' identities, we have not used the actual names of the children, parents, or other family members. *See* Tex. R. App. P. 9.8.

conservator. *See* Tex. Fam. Code Ann. § 109.002(a-1).

Mother executed a voluntary affidavit of relinquishment and has not appealed the termination of her parental rights. Father challenges the legal and factual sufficiency of the evidence to support the trial court's findings on the predicate ground of endangerment and that termination is in the children's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (2). Father further argues the record in this appeal should be limited to the reporter's record because the trial court did not take judicial notice of its file. We affirm.

## I. BACKGROUND

### A. Pretrial proceedings

#### 1. Pretrial Removal Affidavit

The children came into the care of the Department when Dale was born. At Dale's birth, Mother tested positive for methamphetamine and marijuana in her hair. The Department engaged Family Based Safety Services (FBSS) in an attempt to reunite the family. Despite completing substance abuse counseling through FBSS Mother relapsed, testing positive for cocaine and marijuana. Father was repeatedly asked to submit to a hair follicle test, but would not cooperate with the Department. The Department was unable to verify Father's whereabouts due to his "continual avoidance of any Department requests." The children were placed in a temporary Parental Child Safety Placement with their maternal aunt.

#### 2. Department History

Mother has three other children by another man, N.H. (Nick). One of those children, N.H. (Nancy) was the complainant in an indecency-with-a-child charge filed against Father. In 2001 the Department received a referral alleging sexual abuse by Father against Nancy, Father's stepdaughter. Nancy was interviewed by the

2

Children's Assessment Center where she disclosed sexual abuse by Father, which included fondling of her vagina, over her underwear. Nancy's siblings, Mother's other two children, disclosed physical abuse by Father alleging that Father "whips the children with a cowboy belt and leaves bruises." The children reported domestic violence in their home between Father and Mother. Mother agreed to allow Nancy and her siblings to live with Nick, who was protective of the children.

Father subsequently pleaded guilty to indecency with a child by contact and was sentenced to two years in prison. Father was also required to register as a sex offender under Chapter 62 of the Code of Criminal Procedure.

In 2015 an allegation of sexual abuse of Ted by Father was reported, but ruled out.

### 3. Criminal History

Father has been convicted of burglary of a motor vehicle (1989), unauthorized use of a motor vehicle (1990), indecency with a child by sexual contact (2001), and driving while license suspended (2015).

### 4. The Investigation

After the children were removed, Father contacted the Department caseworker. Father told the caseworker he "has been in his children's lives and has been in communication with [Mother]." Father was informed that in order to obtain the return of his children he would need to complete drug testing as requested and follow up with another caseworker about services required by a family-service plan. The caseworker noted in the affidavit's conclusion that Father did not report for a hair-follicle test and had stopped cooperating with the Department.

## B. Final Hearing

The Department caseworker introduced her permanency report to the court,

which was admitted without objection. In the report the caseworker noted that the Department received a referral alleging neglectful supervision of both children because Dale was exposed to drugs while Mother was pregnant. The report noted both parents' history of involvement with the Department, which began in 1998 with Mother's children and picked up again in 2015 with allegations of abuse by Father against Ted, and in 2016 with allegations of abuse by both parents against Ted.

The report described Ted as a well-mannered four-year old who enjoyed coloring and playing with his toys. Ted had been learning Spanish and was described as "very bright." At the time of the report Ted was placed in a foster home, which was providing a safe and nurturing environment. In addition to providing Ted with basic needs of food, clothing, and shelter, the foster parents provided Ted with extracurricular and social activities including church attendance, birthday parties, and vacations.

Dale was described as a happy one-year-old boy who was walking and exploring his surroundings. Dale had begun speaking and repeating numbers and letters. Dale lived in the same foster home as Ted and was enjoying the same safe and nurturing environment with his brother. Dale attended church with his foster family as well as birthday parties.

Mother stated she was voluntarily entering substance-abuse treatment and was relinquishing her parental rights. Mother did not object to the children being placed with Father's cousin.

The caseworker testified that a family-service plan was created for Father, who was required to maintain employment and stable housing in addition to cooperating with the Department and attending all court hearings and permanency reviews. Father was not required to submit to drug testing as a part of his plan. Father fully complied with the service plan. Father was consistent in visiting the children,

4

and the children appeared to have bonded with him.

The caseworker testified about Father's 2001 conviction for indecency with a child. When the caseworker spoke with Father about the offense, Father denied committing the offense, arguing that Nancy was coerced to accuse him. The caseworker testified that the Department sought to terminate Father's rights based on the prior conviction for indecency and Father would be incapable of caring for Ted and Dale because of the allegations of abuse of his stepchildren. The caseworker testified that it is the Department's policy not to place children with registered sex offenders.

The foster mother has been caring for the children since they came into care with the exception of three days. For those three days the children were with their older half-sibling, Nancy. The children were removed from Nancy because she did not seek medical care for one of the children when he had an obvious eye infection, and she allowed Father unsupervised access to the children.

Father testified that he pleaded guilty to the earlier indecency-with-a-child charge in which Nancy was the complainant. Nancy was seven years old and Father was 28 years old at the time of the offense. At the time Dale was born, Father and Mother had been living together for more than twenty years. When Ted was two years old Father moved out for one year, but reconciled with Mother approximately one year later. Father testified that after he discovered Mother's drug use he did not leave her alone with Ted. Father left Mother again when he found out she tested positive for methamphetamine when Dale was born. Father's testimony was contradicted by the caseworker who testified that Mother and Father were living together at the time Dale was born and that family members told the caseworker that Ted has always lived with Mother.

On cross-examination Father acknowledged that he pleaded guilty to

indecency with a child by contact noting, "They said I touched her." When asked: "That you touched her on her genitals," he responded, "Yes." He then volunteered the following additional comment: "Over her clothes."

When asked at what point he learned about Mother's drug use, Father responded: "Well, when she had the baby, it was prescribed drugs. They said methamphetamines or something like that." When asked if he knew methamphetamine was not a prescribed drug, he said, "I know it's pills. I know it was ecstasy pills." When asked if ecstasy pills were a prescribed medication, Father said, "I don't know much about it."

The foster mother testified that the children had lived with her since Dale was eight months old. At that time Dale was behind on his immunizations and Ted had nine cavities. Ted was also behind on immunizations. The foster mother ensured that both children received the medical and dental care they needed. The foster mother used her own money to pay for Ted's dental work because she did not want him to have inferior dental work. Both children were in school at the time of the final hearing in addition to receiving tutoring. Ted and Dale accompanied the foster family on outings including birthday parties and museum visits. The foster mother would like to adopt the children. She is assisted by her daughter, fiancé, and friends in maintaining a structured, stable environment for the children.

Both children have bonded with the foster mother's older children. The children call her fiancé "Papa." Ted helps out with Dale. They are both "good loving children."

After hearing testimony and documentary evidence, the trial court terminated Father's parental rights on endangerment grounds.

## II. ANALYSIS

In Father's first issue, he challenges the legal and factual sufficiency of the evidence to support the trial court's finding on the predicate ground of endangerment. In Father's second issue he challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination is in the best interest of the children.

### A. Standards of review

Involuntary termination of parental rights is a serious matter that implicates fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

Due to the severity and permanency of terminating the parental relationship, the law in Texas requires clear and convincing evidence to support such an order. *See* Tex. Fam. Code Ann. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In re J.F.C.*, 96 S.W.3d at 264.

The heightened burden of proof in termination cases results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (op. on reh'g). We review the legal sufficiency of the evidence

by considering all evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). We must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found incredible. *Id.*; *In re D.R.A.*, 374 S.W.3d at 531. However, this does not compel us to disregard all evidence that does not support the finding. *In re D.R.A.*, 374 S.W.3d at 531. Because of the heightened standard, we also must be mindful of any undisputed evidence contrary to the finding and consider that evidence in our analysis. *Id.*

In reviewing the factual sufficiency of the evidence under the clear-and-convincing burden, we consider and weigh all of the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (internal quotation marks omitted). We give due deference to the factfinder's findings, and we cannot substitute our own judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam).

In a proceeding to terminate the parent-child relationship brought under Family Code section 161.001, the petitioner must establish, by clear-and-convincing evidence, one or more acts or omissions enumerated under subsection 1 of section 161.001(b) and that termination is in the best interest of the child under subsection 2. Tex. Fam. Code Ann. § 161.001(b); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).

## B. Judicial Notice of the Clerk's Record

In his third issue Father argues the record on appeal should be limited to the

8

reporter's record because the trial court did not announce that it took judicial notice of its file. Father acknowledges authority adverse to his position from this court. *See, e.g., In re K.F.*, 402 S.W.3d 497, 504 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Father states, "Because this Court has already spoken to this issue, Appellant raises this here to preserve for supreme court review of the due process concerns and split in the courts of appeals." Because we are bound by this court's precedent, we overrule Father's third issue. *See Taylor v. First Community Credit Union*, 316 S.W.3d 863, 869 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *In re F.M.E.A.F.*, No. 14-18-00865-CV, 2019 WL 1291314 at *2 (Tex. App.—Houston [14th Dist.] Mar. 21, 2019, no pet. h.) (overruling identical issue raised by parent). We presume the trial court took judicial notice of the clerk's record. *See In re K.F.*, 402 S.W.3d at 504.

We agree with Father that no factual statements or allegations contained in the clerk's record, which were not admitted during the final hearing, may be considered evidence when reviewing the sufficiency of the evidence. *See In re F.M.E.A.F.*, 2019 WL 1291314 at *2 (trial court may not take judicial notice of the truth of factual statements and allegations contained in the documents in the court's files).

Accordingly, we overrule Father's third issue and will review the full record before this court, including the clerk's record.

## C.    Predicate Termination Grounds

The trial court made predicate termination findings that Father committed acts establishing the grounds set out in subsections D and E of section 161.001(b)(1), which provides for termination of parental rights if the factfinder finds by clear and convincing evidence that the parent has:

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

. . . [or]

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]

Tex. Fam. Code Ann. § 161.001(b)(1)(D) and (E).

Only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when the factfinder also finds that termination is in the children's best interest. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We will address the trial court's finding of endangerment under subsection E.

"To endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *See In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam); *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). A finding of endangerment under subsection E requires evidence that the endangerment was the result of the parent's conduct, including acts, omissions, or failures to act. *In re S.R.*, 452 S.W.3d at 360. Termination under subsection E must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *Id.* A trial court properly may consider actions and inactions occurring both before and after a child's birth and before and after removal to establish a course of conduct. *Id.* at 360–61. "While endangerment often involves physical endangerment, the statute does not require that conduct be directed at a child or that the child actually suffers injury; rather, the specific danger to the child's well-being may be inferred from parents' misconduct alone." *Id.* at 360 (citing *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). A parent's conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-

being. *Id.*

Father argues that the Department conceded that Father's prior conviction for indecency with a child did not support a predicate ground for termination. In making this argument Father relies on a portion of the Department's closing argument:

> I did plead — and I did look at [Tex. Fam. Code Ann. § 161.001(b)(1)(L)],[2] which is the respondent's been convicted or has been placed in community supervision, including deferred adjudication supervision or being criminally responsible, and the language is for the death or serious injury of a child; and the State will point out that I don't think I have sufficient evidence — produced sufficient evidence on the serious bodily injury language contained within L; however, I do think that the conviction for indecency with a child goes to the best interest element, and that is we believe that based on all the foregoing evidence it would be in the best interest to terminate . . . [Father's] . . . rights based on 161.001[(b)(1)], D and E grounds, Your Honor. Thank you.

Father argues that in conceding the absence of evidence to support a finding of serious bodily injury under subsection L, the Department conceded that Father's prior conviction for indecency with a child was not evidence in support of the endangerment finding.

Father appears to argue that evidence of the prior conviction only goes toward

---

[2] Subsection L permits termination of parental rights if the trial court finds by clear and convincing evidence that the parent has:

> (L) been convicted or has been placed on community supervision, including deferred adjudication community supervision, for being criminally responsible for the death or serious injury of a child under the following sections of the Penal Code, or under a law of another jurisdiction that contains elements that are substantially similar to the elements of an offense under one of the following Penal Code sections, or adjudicated under Title 3 for conduct that caused the death or serious injury of a child and that would constitute a violation of one of the following Penal Code sections:
>
> ***
>
> (iv) Section 21.11 (indecency with a child);

Tex. Fam. Code Ann. § 161.001(b)(1)(L)(iv).

proof of subsection L. To the contrary, "[e]vidence of sexual abuse of one child is sufficient to support a finding of endangerment with respect to other children." *In re J.P.T.*, No. 14-16-00156-CV, 2016 WL 3947756, at *4 (Tex. App.—Houston [14th Dist.] July 19, 2016, pet. denied) (mem. op.); *In re R.W.*, 129 S.W.3d 732, 742 (Tex. App.—Fort Worth 2004, pet. denied). Violent or abusive acts directed toward one child can endanger other children that are not the direct victims of the abuse in question and support termination of parental rights as to the other children, even if the other children were not yet born at the time of the conduct. *In re L.M.N.*, No. 01-18-00413-CV, 2018 WL 5831672, at *16 (Tex. App.—Houston [1st Dist.] Nov. 8, 2018, pet. denied) (mem. op.). Courts of appeals have consistently held in termination cases that evidence a parent has sexually or physically abused a child not subject of the termination action also constitutes evidence of endangerment to the child subject to the termination action. *In re E.A.K.*, 192 S.W.3d 133, 150–51 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

This court has previously held that we may infer from a parent's plea of guilty to aggravated sexual assault of a stepdaughter that the parent engaged in conduct that will endanger or jeopardize the physical or emotional well-being of other children in the home who may discover the abuse or be abused themselves. *In re K.K.D.B.*, No. 14-17-00302-CV, 2017 WL 4440546, at *7 (Tex. App.—Houston [14th Dist.] Oct. 5, 2017, pet. denied) (mem. op.).

In this case Father pleaded guilty to committing indecency with a child by contact and was required to register as a sex offender. The child victim was one of Mother's children by another man. Just as in *In re K.K.D.B*, the trial court in this case could reasonably find Father's admitted sexual offense endangered Ted and Dale. There was evidence that Father, even as an adult, did not take responsibility for his crime, attempted to minimize his crime, and blamed his victim by contending

12

the child was coerced and the event never happened.

Father also argues that his conviction for indecency with a child was too remote in time to constitute legally- and factually-sufficient evidence supporting the trial court's endangerment finding. Father suggests that this court ignore Father's prior conviction in reviewing the sufficiency of the evidence of endangerment. While termination may not be based solely on conditions that existed in the distant past but no longer exist, the dispositive inquiry is whether the past continues to bear on the present. *See In re S.G.*, No. 01-18-00728-CV, 2019 WL 1448870, at *9 (Tex. App.—Houston [1st Dist.] Apr. 2, 2019, no pet. h.) (mem. op.). Father's conviction for indecency with a child requires him to register as a sex offender. *See* Tex. Code Crim. Proc. arts. 62.001(6)(A), 62.101(a)(1). In requiring lifetime registration, the Legislature has made a policy decision that the crime for which Father was convicted will never be so remote that it will no longer be a matter of legitimate public concern. *See In re S.G.*, 2019 WL 1448870 at *9 (citing *Young v. State*, 341 S.W.3d 417, 426 (Tex. Crim. App. 2011) (concern about repeat sex offenses and desire to thwart future sex crimes underlies registration requirement)). Therefore, evidence of Father's prior conviction for indecency with a child by contact is sufficient to support the trial court's endangerment finding under section 161.001(b)(1)(E).

Reviewing all the evidence in the light most favorable to the termination finding under subsection E, we conclude that a reasonable factfinder could have formed a firm belief or conviction as to the truth of the finding that Father endangered his children through his conduct. *See In re J.O.A.*, 283 S.W.3d at 344. In light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the endangerment finding is not so significant that a factfinder could not reasonably have formed a firm belief or conviction as to the truth of this termination finding. *See In re H.R.M.*, 209 S.W.3d at 108. As the finder

of fact and sole judge of the credibility of the witnesses, the trial court was free to disregard any or all of Father's self-serving testimony. *See In re S.A.H.*, 420 S.W.3d 911, 927 (Tex. App.–Houston [14th Dist.] 2014, no pet.). We hold the evidence is legally and factually sufficient to support the predicate termination finding under subsection E, and overrule Father's issue challenging this ground.

Having concluded the evidence is legally and factually sufficient to support the trial court's finding under subsection E, we need not review the sufficiency of the evidence to support the subsection D finding. *See In re A.V.*, 113 S.W.3d at 362. We overrule Father's issue on this ground.

## D.    Best Interest of the Children

In Father's second issue, he challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of his parental rights is in the best interest of the children. *See* Tex. Fam. Code Ann. § 161.001(b)(2).

There is a strong presumption that the best interest of the children is served by keeping the children with their natural parents. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing Tex. Fam. Code Ann. § 153.131(b)); *In re D.R.A.*, 374 S.W.3d at 533. However, prompt and permanent placement of the children in a safe environment is also presumed to be in the children's best interest. *In re S.R.*, 452 S.W.3d at 366 (citing Tex. Fam. Code Ann. § 263.307(a)). Proof of acts or omissions under section 161.001(b)(1) is probative of the issue of the children's best interest. *See id.* The considerations that the factfinder may use to determine the best interest of the children, known as the *Holley* factors, include:

(1) the desires of the children;
(2) the present and future physical and emotional needs of the children;
(3) the present and future physical and emotional danger to the children;
(4) the parental abilities of the person seeking custody;

(5) the programs available to assist the person seeking custody in promoting the best interest of the children;

(6) the plans for the children by the individuals or agency seeking custody;

(7) the stability of the home or proposed placement;

(8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and

(9) any excuse for the parent's acts or omissions.

*See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re S.R.*, 452 S.W.3d at 366; *see also* Tex. Fam. Code Ann. § 263.307(b) (listing factors to be considered in evaluating "whether the child's parents are willing and able to provide the child with a safe environment"). A best-interest finding does not require proof of any unique set of factors, nor does it limit proof to any specific factors. *See Holley*, 544 S.W.2d at 371–72; *In re S.R.*, 452 S.W.3d at 366.

In reviewing the legal and factual sufficiency of the evidence to support the trial court's finding on best interest, we are mindful that the focus in a best-interest analysis is not only on the parent's acts or omissions, but on the nature of the relationship the children have with the parent. *In re E.N.C.*, 384 S.W.3d 796, 808 (Tex. 2012).

### 1. The desires of the children

The children were removed when Ted was almost four and Dale was a newborn. When children are too young to express their desires, the factfinder may consider that the children have bonded with the foster parents, are well cared for by the foster parents, and have spent minimal time with a parent. *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

In addressing this factor Father observes that the evidence shows he has bonded with his children. The record further reflects, however, that the foster parent

has also bonded with the children. Although a child's love of a parent is a very important consideration in determining the best interest of the children, it cannot override or outweigh evidence of danger to the child, nor can it compensate for the lack of an opportunity to grow up in a normal and safe way equipped to live a normal, productive, and satisfying life. *In re K.L.P.*, No. 14-18-00582-CV, 2018 WL 6684275, at *10 (Tex. App.—Houston [14th Dist.] Dec. 20, 2018, pet. denied) (mem. op.).

Father argues that the foster parent, Father, and Father's relatives are "all equally suited to provide a stable, safe, nurturing environment." The record contains no evidence about Father's relatives and whether they were equally suited to care for the children. Father further argues that his parental rights should not be terminated until the Department concludes its investigation of his relatives and determines placement. Children's anticipated placement is a factor in determining the children's best interest, but the fact that placement will be with non-relatives is not a bar to termination. *See In re A.L.*, 389 S.W.3d 896, 902 (Tex. App.—Houston [14th Dist.] 2012, no pet.). That the Department has not yet considered potential placement with a paternal relative does not bear on whether termination is in the children's best interest. *In re K.P.C.*, No. 14-17-00993-CV, 2018 WL 2106669, at *12 (Tex. App.—Houston [14th Dist.] May 8, 2018, pet. denied) (mem. op.).

### 2. Present and future physical and emotional needs of the children and present and future physical and emotional danger to them

"Regarding this factor, we note that the need for permanence is a paramount consideration for the child's present and future physical and emotional needs." *In re D.R.A.*, 374 S.W.3d at 533. Establishing a stable, permanent home for a child is a compelling government interest. *Id.*

The Family Code provides a list of factors that are to be considered in

determining "whether the child's parents are willing and able to provide the child with a safe environment." One of those factors is "whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home." *A.B. v. Texas Dep't of Family & Protective Services*, No. 03-17-00658-CV, 2018 WL 1220894, at \*4 (Tex. App.—Austin Mar. 9, 2018, no pet.) (mem. op.). The evidence detailed above of Father's endangering conduct supports the trial court's finding that termination of Father's rights was in the children's best interest. A parent's past dangerous behavior indicates the potential for future dangerous behavior. *In re J. I. T.*, No. 01-17-00988-CV, 2018 WL 3131158, at \*17 (Tex. App.—Houston [1st Dist.] June 27, 2018, pet. denied) (mem. op.).

By contrast, the foster parent is providing the children with a safe and stable home environment. Despite the state of the children's medical and dental health at the time they came into care, the children were thriving at the time of the final hearing and happy living with the foster parent. The Department's long-term permanent placement plan is for the foster parent to adopt the children. *See In re C.H.*, 89 S.W.3d at 28 (evidence about placement plans and adoption is relevant to best interest). The trial court could have weighed these factors in favor of termination.

### 3. Acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate, and any excuse for the parent's acts or omissions

Father did not offer excuses for his acts or omissions. To the contrary, Father attempted to minimize his conviction for indecency with a child by first claiming the victim had been coerced to accuse him and second that he had done nothing wrong. When confronted with details of his offense, Father further attempted to minimize his actions by stating that he touched a young child's genitals "over her clothes."

Under all the circumstances in this case and applying the applicable *Holley* factors to all the evidence, we conclude that legally- and factually-sufficient evidence supports the trial court's finding that termination of Father's parental rights is in the children's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(2).

We overrule Father's issue challenging the trial court's best-interest finding.

### III.     CONCLUSION

We acknowledge that this termination finding under subsection E is based in part on Father's almost two-decades-old conviction of indecency with a different child. The evidence is, however, legally and factually sufficient.

We affirm the trial court's final order.


/s/     Charles A. Spain
Justice


Panel consists of Justices Wise, Zimmerer, and Spain.

18