**Affirmed and Opinion filed April 18, 2024.**



In The

# Fourteenth Court of Appeals

## NO. 14-24-00010-CV

## IN THE INTEREST OF A.R.D., A CHILD

**On Appeal from the 315th District Court
Harris County, Texas
Trial Court Cause No. 2022-01816J**

## OPINION

Appellant M.J. (Mother) appeals the trial court's final order of termination of her parental rights appointing the Department of Family and Protective Services (Department) as sole managing conservator of her child, A.R.D. (Ann).[1] *See* Tex. Fam. Code § 263.405(a). The trial court terminated Mother's parental rights on predicate grounds of endangerment, constructive abandonment, and failure to comply with a family service plan. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E),

---

[1] Ann is a pseudonym, which we use to protect the minor in this case. *See* Tex. R. App. P. 9.8.

(N), (O). The trial court further found that termination of Mother's parental rights was in the child's best interest. *See* Tex. Fam. Code § 161.001(b)(2). On appeal Mother challenges the legal and factual sufficiency of the evidence to support the trial court's findings on predicate grounds and the finding that termination of her parental rights was in the best interest of the child. We affirm.

## BACKGROUND

Ann was born in the fall of 2022 and came to the Department's attention at birth because Mother and child tested positive for opiates and marijuana. Mother had also earlier tested positive for opiates and marijuana while pregnant with Ann. The Department also received reports that Ann's Father was using illegal drugs. The Department sought removal of the child from Mother because both Mother and Ann tested positive for opiates at birth, Mother's parental rights to a one-year-old child had recently been terminated, and Mother had failed to engage in services while that termination case was pending. Citing an immediate danger to the child the Department sought removal and later filed a petition for termination of the parents' rights.

We begin with a recitation of the testimony and evidence presented at trial.

## I. Evidence

### A. Investigative Caseworker Shanika Tolliver

Tolliver testified that the child initially came to the attention of the Department because she and Mother testified positive for illegal drugs at birth. The child developed respiratory distress while in the hospital. Mother admitted that she had used marijuana and Tylenol #3 about one week before delivering the child. Tolliver asked Mother to provide a copy of her Tylenol #3 prescription, but Mother did not provide a copy. Mother reported that she received prenatal care through the

2

first 28 weeks of pregnancy, but when Tolliver checked with the physician Mother reported seeing, the physician had no record of Mother being a patient.

Tolliver testified that Mother had four previous cases with the Department, resulting in all four of Mother's children having been removed from her care. At the time Ann was born, there was a pending termination proceeding with Ann's one-year-old sibling. While this case was pending Mother's parental rights were terminated to that sibling based on the predicate ground of failure to complete services. This was concerning to the Department because they had just "finished trying to offer [Mother] services and [the Department was] still in the same predicament with a positive baby."

Mother did tell Tolliver she was open to substance abuse therapy, but Tolliver's confidence level was low due to Mother's history with the Department. Father informed Tolliver that he was aware of Mother's drug use during pregnancy.

### B. Mother

Mother had three other children, ages eight, four, and two at the time of trial. Mother testified that the Department became involved with each of her children due to substance abuse allegations. Mother began using marijuana and painkillers at age 12 after being sexually abused. Mother testified she had not used illegal drugs in the year before trial. Mother admitted using marijuana while pregnant with Ann, and taking "a painkiller." Mother also admitted she did not have a prescription for painkillers.

Mother admitted she was asked to submit to drug testing, but refused. Mother explained that she refused because she was not permitted to visit the child. The last time Mother had seen the child was almost one year before trial. Mother excused her absence by testifying, "I haven't been involved because no one involved me in

3

anything."

### C.    Caseworker Jasmine Smith

Smith testified that Ann was one year old at the time of trial and was living with a foster placement arranged with Mother's approval through a mediated settlement agreement. Ann was born with a heart murmur, which appears to be resolving and will be checked again when she turns two. Ann lives with two foster parents and their two biological children, ages nine and eleven. The foster parents have a "loving, caring, responsible" bond with Ann. Ann's siblings are placed with other caregivers because the Department was unable to find a caregiver who would accept all four siblings. Ann was originally placed with Mother's cousin who cared for one of Ann's older siblings, but Mother's cousin was unable to obtain maternity leave and daycare for a second child. The siblings visit each other at least once a month.

Smith created a Family Service Plan for Mother and the trial court ordered Mother to comply with the plan. Mother was ordered to complete parenting classes, individual therapy, substance abuse assessment, follow all recommendations, drug testing, participate and cooperate with the Department, refrain from criminal activities, maintain stable housing and maintain stable income, complete a psychiatric evaluation and follow all recommendations, as well as psychosocial evaluation and follow all recommendations.

Mother had not kept in contact with Smith while the case was pending, and did not have a reliable phone number. Smith had difficulty communicating with Mother because Mother would communicate via text messages sent from different phone numbers. Mother refused to provide Smith with a home address before trial. Smith engaged in a search for an address, found one possibility, but when she visited that address Mother was not there. Mother did send "paperwork" explaining that

4

Mother was working a job involving truck driving, but it was unclear what job Mother was doing. Smith submitted documentation for Mother to obtain services such as psychiatric evaluation and therapy. Smith was unable to explain the services to Mother face-to-face because Mother refused to meet with Smith. Smith was able to explain the required services to Mother over the phone. Any appointments that Smith arranged for Mother to meet with her, Mother would not appear. Smith kept the service providers updated with all of Mother's phone numbers, but the service providers were unable to contact Mother. Mother did not complete any of the services prescribed by her plan.

During the first permanency hearing about this case Mother was removed due to her behavior. Mother attended only one additional hearing. While the termination case was pending Mother was arrested for possession of methamphetamine and cocaine with intent to sell. The criminal charge was outstanding at the time of the final hearing on termination. The Department was concerned that if Ann were returned to Mother there was a possibility that Mother could be incarcerated, and the Department would no longer be able to ensure the child's safety.

Mother has not demonstrated that she is focused on getting Ann back. Additionally, Mother is not focused on getting sober or working services to get her back. Mother's failure to seek treatment for substance abuse occurred with her older three children and that failure persisted in this case. Mother was originally asked to submit to drug testing weekly, then the request was reduced to monthly testing. The reduction in frequency was due to Mother's lack of communication with the Department. Despite being ordered to submit to drug testing, as of the date of trial, Mother had not submitted to any drug tests.

Mother was given visitation of one hour per week or two hours biweekly, but failed to attend any of those visits but one about 11 months before trial. Mother did

not contact the caseworker to inform her she would be missing appointments. The trial court suspended Mother's visitation approximately four months before trial because Mother had not submitted to drug testing. Mother inquired about visitation during this period and Smith informed Mother that if she submitted to drug testing she could visit the child.

Mother was afforded an opportunity to show that she could provide Ann with a safe and stable living environment, but had not done so. Mother made no attempts to submit to drug testing nor did she attempt to engage in any services despite referrals from the Department. Contrary to Mother's testimony, Mother was afforded an opportunity to visit her child more than once but her visitation privileges were suspended because she refused to submit to drug testing.

Mother's rights were terminated with regard to a sibling one year older than Ann. Mother had visitation rights with her older two children subject to the caregivers' schedule. Smith recommended termination citing Mother's complete lack of engagement with Ann and her complete failure to engage in services. Smith testified that Ann had been with the foster family for more than a year and they were ensuring all her needs were being met. The foster family also made sure that Ann stayed connected with her siblings. Ann was bonded with the foster parents and their children and was thriving with the family.

### D.    Child Advocate Javier Gonzales

Javier Gonzales was the Child Advocate supervisor assigned to Mother's case. Gonzales testified that Ann was bonded with the foster parents and their biological children. He further testified that it would not be in Ann's best interest to be returned to her first placement. Gonzales testified that neither of Ann's parents had demonstrated the ability to provide a safe and stable environment. He also pointed to Mother's history with the Department as another reason the foster family was the

6

safest, most stable environment for Ann. Numerous attempts were made by another volunteer with Child Advocates to contact Mother, but Mother did not respond.

The Child Advocates report, admitted into evidence, noted that Mother's cousin who adopted Ann's older sister will accept Ann if the foster family is unable to adopt, but the cousin did not want to disrupt the bond Ann had with the foster family.

### E. Foster Mother

The foster mother testified that Ann had been placed in her home for more than one year. The foster family had a party for Ann's first birthday where Ann's sisters were able to attend. They try to visit Ann's sisters once a month. Ann was "running . . . not walking," was able to say common words, and called her foster father, "Dada." Ann was diagnosed at birth with a heart murmur, but it appears to be resolving on its own. The foster family has kept up with medical appointments for Ann and she was on track developmentally for her age. Since Ann recently turned one, the foster family is the only family she knows. The foster family planned to adopt Ann. The foster mother tried to reach Mother on Mother's Day so that Ann could see her, but Mother did not respond.

If permitted to adopt, the foster mother planned to continue Ann's relationship with her sisters. The foster mother testified that it would be detrimental to remove Ann from their home, describing such a removal as "devastating." Ann's best interest was the foster mother's primary concern.

The foster mother contacted Mother asking if Mother wanted to receive pictures or talk to Ann, but Mother did not respond. Despite receiving no response from Mother, the foster mother sent pictures to Mother several times a month until Mother's Day. If Mother wanted to spend time with Ann the foster mother would

encourage it.

## II.     Trial Court's Findings

On December 4, 2023, the trial court signed a "Final Decree for Termination." The court found that termination of Mother's parental rights was in the child's best interest and was justified under several subsections of section 161.001(b)(1) of the Family Code. Mother's parental rights were terminated pursuant to section 161.001(b)(1) (D), (E), (N), and (O) of the Family Code. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E) (N), (O). Father's parental rights were also terminated pursuant to section 161.001(b)(1) (N) and (O) of the Family Code. The trial court appointed the Department to be the child's sole managing conservator. Mother timely appealed.

## ANALYSIS

Mother presents five issues on appeal, asserting that the evidence is legally and factually insufficient to support termination of her parental rights pursuant to Family Code section 161.001(b)(1) (D), (E) (N), and (O); and the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in the child's best interest.

## I.     Standards of Review

In a proceeding to terminate the parent-child relationship under Family Code section 161.001, the petitioner must establish by clear and convincing evidence one or more acts or omissions enumerated under subsection (1) of section 161.001(b) and that termination is in the best interest of the child under subsection (2). *See* Tex. Fam. Code § 161.001; *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *See In re of J.F.-G.*, 627

S.W.3d 304, 310 (Tex. 2021); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *See In re A.C.*, 560 S.W.3d 624, 629 (Tex. 2018); *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

Due to the severity and permanency of terminating the parent-child relationship, Texas requires clear and convincing evidence to support such an order. *See* Tex. Fam. Code § 161.001; *In re J.F.-G.*, 627 S.W.3d at 310; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a "correspondingly searching standard of appellate review." *In re A.C.*, 560 S.W.3d at 630.

In reviewing the legal sufficiency of the evidence in a parental termination case, we must consider all evidence in the light most favorable to the challenged finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that the finding was true. *See In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). We assume that the fact finder resolved disputed facts in favor of the finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *See id.*; *In re G.M.G.*, 444 S.W.3d 46, 52 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Because of the heightened standard, we also must be mindful of any undisputed evidence contrary to the finding and consider that evidence in our analysis. *In re D.R.A.*, 374 S.W.3d at 531.

In reviewing the factual sufficiency of the evidence under the clear-and-convincing standard, we consider and weigh disputed evidence contrary to the finding against all the evidence favoring the finding. *In re A.C.*, 560 S.W.3d at 631;

*In re J.O.A.*, 283 S.W.3d at 345. If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.O.A.*, 283 S.W.3d at 345. We give due deference to the fact finder's findings, and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

To affirm a termination judgment on appeal, a court need uphold only one termination ground—in addition to upholding a challenged best-interest finding— even if the trial court based the termination on more than one ground. *In re N.G.*, 577 S.W.3d at 232; *In re L.M.*, 572 S.W.3d 823, 832 (Tex. App.—Houston [14th Dist.] 2019, no pet.). We must review termination under subsection (D) or (E) because a finding of termination under those grounds may justify termination of parental rights to other children under subsection (M). *See In re N.G.*, 577 S.W.3d 230, 235–37 (Tex. 2019); *see also* Tex. Fam. Code § 161.001(b)(1)(M).

## II.     Predicate Grounds of Endangerment

### A.     Applicable law

A trial court may order termination of a parent-child relationship if the court finds by clear and convincing evidence that a parent has knowingly placed or knowingly allowed a child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child and/or engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E). Both subsections (D) and (E) require proof of endangerment. To "endanger" means to expose the child to loss or injury or to jeopardize the child's emotional or physical health. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531,

533 (Tex. 1987).

While both subsections (D) and (E) focus on endangerment, they differ regarding the source of the physical or emotional endangerment to the child. *See In re A.C.*, No. 14-23-00577-CV, 2024 WL 440263, at *8 (Tex. App.—Houston [14th Dist.] Feb. 6, 2024, no pet.) (mem. op.). Endangerment under subsection (D) may be established by evidence related to the child's environment. *In re A.S.*, 261 S.W.3d 76, 83 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). "Environment" refers to the acceptability of living conditions, as well as a parent's conduct in the home. *In re J.E.M.M.*, 532 S.W.3d 874, 881 (Tex. App.—Houston [14th Dist.] 2017, no pet.). A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Although the parent need not have certain knowledge that an actual injury is occurring, the parent must at least be aware of the potential for danger to the child in such an environment and must have disregarded that risk. *In re J.D.*, 436 S.W.3d 105, 114 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

The fact finder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent. *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.); *see also In re F.H.*, No. 14-18-00209-CV, 2018 WL 3977931, at *8 (Tex. App.—Houston [14th Dist.] Aug. 16, 2018, no pet.) (mem. op.). Subsection (D) permits termination if the petitioner proves parental conduct caused a child to be placed or remain in an endangering environment. *In re J.W.*, 645 S.W.3d 726, 749 (Tex. 2022). Subsection (D) permits termination based upon only a single act or omission. *In re V.A.*, 598 S.W.3d 317, 329 (Tex. App.—Houston [14th Dist.] 2020, pet. denied).

Under subsection (E), the cause of the endangerment must be the direct result

of the parent's conduct, including acts, omissions, and failures to act, and the requirements of the subsection may be satisfied by showing the parent engaged in a course of conduct that endangered the child's physical or emotional well-being. *In re J.D.*, 436 S.W.3d at 114. The statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *Id*. While endangerment often involves physical endangerment, the statute does not require that conduct be directed at a child or that the child actually suffers injury; rather, the specific danger to the child's well-being may be inferred from parents' misconduct alone. *Boyd*, 727 S.W.2d at 533; *In re L.M.*, 572 S.W.3d at 834. A parent's conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re F.E.N.*, 542 S.W.3d 752, 764 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

### B.     Endangerment by Conduct (161.001(b)(1)(E))

In Mother's first and second issues she asserts the evidence is legally and factually insufficient to support termination of her parental rights on endangerment grounds. *See* Tex. Fam. Code § 161.001(b)(1)(D) and (E). We will address Mother's second issue first, i.e., whether the evidence is legally and factually sufficient to support termination of Mother's parental rights under subsection (E).

To recap, a finding of endangerment under subsection (E) requires evidence that the endangerment was the result of the parent's conduct, including acts, omissions, or failures to act. *In re S.R.*, 452 S.W.3d at 360. A trial court properly may consider actions and inactions occurring both before and after a child's birth and before and after removal to establish a course of conduct. *Id*. at 360–61. A parent's conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re T.L.E.*, 579 S.W.3d 616, 624 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).

12

Evidence from before and after Ann's removal from Mother's care supports the finding that Mother engaged in a course of conduct that endangered the child's physical and emotional well-being. *See* Tex. Fam. Code § 161.001(b)(1)(E); *see also In re S.R.*, 452 S.W.3d at 360. Medical records, admitted without objection, reflect that Mother and Ann tested positive for cannabis and opiates at birth. Drug abuse during pregnancy constitutes conduct that endangers a child's physical and emotional well-being. *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.).

Despite being given multiple opportunities and knowing that she could not visit her child before submitting to drug testing, Mother refused to submit to any drug tests during the pendency of this case. A fact finder reasonably can infer that a parent's failure to submit to court-ordered drug tests indicates the parent is avoiding testing because they were using illegal drugs. *See A.N.W.S. v. Tex. Dep't of Family & Protective Services*, No. 14-22-00170-CV, 2022 WL 2517114, at *5 (Tex. App.—Houston [14th Dist.] July 7, 2022, pet. denied) (mem. op.). The record also contains drug screening results from before Ann's birth that reflect positive results for cocaine and opiates on May 27, 2020, and positive results for methamphetamine, marijuana, and opiates on September 9, 2021. Ann's older sister was born in August 2021.

There is also evidence Mother engaged in additional criminal activity. *See In re L.M.*, 572 S.W.3d at 834 n.4 ("Evidence of criminal conduct, convictions, imprisonment, and their effects on a parent's life and ability to parent, may establish an endangering course of conduct."). On September 2, 2023, while this case was pending, Mother was indicted for possession with intent to deliver methamphetamine. In 2018, Mother was convicted of assault causing bodily injury. With respect to her other children, Mother's history with the Department included neglect, drug abuse, and criminal activity. *See In re A.J.D.-J.*, 667 S.W.3d 813, 824

(Tex. App.—Houston [1st Dist.] 2023, no pet.) (detailing Mother's pattern of indifference to her parental responsibilities when affirming termination of Mother's rights to Ann's older sibling); *see also In re P.N.T.*, 580 S.W.3d 331, 356 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (when reviewing an endangerment finding under subsection (E), "the parent's treatment of other children must be considered").

Mother visited Ann once before Mother's visits were suspended due to her refusal to submit to drug testing. This evidence shows that Mother has not made a conscientious effort to maintain her parental relationship with Ann. *See In re C.W.M.P.*, No. 14-20-00571-CV, 2021 WL 244865, at *7 (Tex. App.—Houston [14th Dist.] Jan. 26, 2021, pet. denied) (mem. op.) (citing *In re A.R.M.*, 593 S.W.3d 358, 371-72 (Tex. App.—Dallas 2018, pet. denied) ("missed visits with the child" relevant to an endangerment finding under subsection (E)).

Finally, we note that Mother wholly failed to engage in services required by the family service plan. A failure to complete a court-ordered service plan may constitute evidence supporting an endangerment finding because such conduct subjects a child to instability and uncertainty, which endangers the child. *In re S.D.H.B.*, No. 14-23-00343-CV, 2023 WL 7201251, at *7 (Tex. App.—Houston [14th Dist.] Nov. 2, 2023, pet. denied) (mem. op.).

When a pattern of drug use is coupled with credible evidence of attendant risks to employment, housing, and prolonged absence from the child, a fact finder reasonably can find endangerment to the child's physical or emotional well-being under subsection (E). *In re R.R.A.*, No. 22-0978, 2024 WL 1221674 (Tex. Mar. 22, 2024). The evidence of Mother's continued drug abuse, criminal history, her relationships with her other children, and her relationship with Ann constitutes legally and factually sufficient evidence to support the trial court's subsection (E)

finding. *See* Tex. Fam. Code § 161.001(b)(1)(E). Viewing the evidence in the light most favorable to Mother, we conclude that the evidence is legally sufficient to support the trial court's finding of endangerment under section 161.001(b)(1)(E). Further, in view of the entire record, we conclude the evidence to the contrary is not so significant as to prevent the trial court from forming a firm belief or conviction that termination was warranted under subsection (E). We overrule Mother's challenge to the trial court's predicate finding under subsection 161.001(b)(1)(E).

Having concluded the evidence is legally and factually sufficient to support the trial court's finding under subsection (E), we need not review the sufficiency of the evidence to support the findings under subsections (D), (N), and (O). *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We overrule Mother's first four issues on appeal and turn to the trial court's best-interest finding.

## III.  Best-Interest Finding

The trial court found that termination of Mother's parental rights is in Ann's best interest. *See* Tex. Fam. Code § 161.001(b)(2). Mother challenges this finding asserting the evidence is legally and factually insufficient to support it.

The best interest inquiry is child-centered and focuses on the child's well-being, safety, and development. *In re A.C.*, 560 S.W.3d at 631. The trier of fact may consider several factors to determine the child's best interest, including: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse

15

for the parents' acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re E.R.W.*, 528 S.W.3d 251, 266 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also* Tex. Fam. Code § 263.307(b) (listing factors to consider in evaluating parents' willingness and ability to provide the child with a safe environment).

Courts apply a strong presumption that the best interest of the child is served by keeping the child with her natural parents, and it is the Department's burden to rebut that presumption. *In re D.R.A.*, 374 S.W.3d at 531. Prompt and permanent placement in a safe environment also is presumed to be in the child's best interest. Tex. Fam. Code § 263.307(a). A finding in support of "best interest" does not require proof of any unique set of factors, nor does it limit proof to any specific factors. *See Holley*, 544 S.W.2d at 371–72. Evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 28. And a fact finder may measure a parent's future conduct by her past conduct in determining whether termination of parental rights is in the child's best interest. *In re L.G.*, No. 14-22-00335-CV, 2022 WL 11572541, at *11 (Tex. App.—Houston [14th Dist.] Oct. 20, 2022, no pet.) (mem. op.). We review the *Holley* factors in light of the evidence at trial.

## A. The desires of the child

Ann was one year old when the final hearing began. When a child is too young to express her desires, the fact finder may consider that the child has bonded with the foster family, is well cared for by them, and has spent minimal time with a parent. *In re J.J.L.*, 578 S.W.3d 601, 610 (Tex. App.—Houston [14th Dist.] 2019, no pet.). The undisputed evidence shows Ann is well cared for by her foster parents and thriving under their care. Ann has never lived with Mother and Mother has only visited Ann once in her life. Evidence of little or no contact with the child is evidence

16

that weighs heavily in favor of a trial court's best-interest finding. *In re A.J.D.-J.*, 667 S.W.3d at 824 (crediting evidence of parents' minimal and sporadic visitation—5 out of "at least two dozen" visits—with one-year-old child as proof supporting best-interest finding under multiple *Holley* factors).

**B.**  **The present and future physical and emotional needs of the child; the present and future physical and emotional danger to the child; and the parental abilities of the individuals seeking custody**

Mother admitted at trial and concedes in her brief on appeal that she is not currently able to achieve reunification with her child. A parent's inability to provide adequate care for her child, unstable lifestyle, lack of a home and income, lack of parenting skills, and poor judgment may be considered when looking at the child's best interest. *In re J.D.*, 436 S.W.3d at 119. "[A]n uninterested parent poses an emotional and physical danger to the child." *In re A.J.D.-J.*, 667 S.W.3d at 823.

**C.**  **Programs available to assist those individuals seeking custody to promote the best interest of the child; plans for the child by the parties seeking custody; stability of the home or proposed placement; acts or omissions that indicate the parent-child relationship is not appropriate**

These related factors compare the Department's plans and proposed placement of the child with the plans and home of the parent seeking to avoid termination of the parent-child relationship. *See In re D.R.A.*, 374 S.W.3d at 535.

On appeal Mother does not dispute the stability of Ann's current placement. She asserts, however, that there was no evidence that programs available to those seeking custody would promote the child's best interest, nor was there evidence that programs would not be available to assist her in the future. The record reflects that while this case was pending Mother did not access any services available to her or seek to visit the child more than once in her first year of life. Mother failed to communicate with the caseworker and frustrated the caseworker's efforts by failing

17

to provide reliable contact information. "Whatever programs may be available to assist in promoting the child's best interest, a parent who lacks the motivation to fulfill his or her parental duties is unlikely to utilize or benefit from these programs." *In re A.J.D.-J.*, 667 S.W.3d at 823. The significant evidence of Mother's indifference to her child in this case weighs heavily in favor of the trial court's finding that termination is in the child's best interest. "Parental indifference to one's offspring supports a finding that termination of parental rights is in a child's best interest under every one of the *Holley* factors." *Id.*

In addition to Mother's failure to visit her child, the trial court was entitled to consider Mother's history of substance abuse, history with the Department, and her criminal history to support the finding that termination was in the child's best interest. *See e.g., In re S.N.*, 287 S.W.3d 183, 193 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (considering parent's incarceration for a suspended driver's license at the time his children were removed and later 18-day incarceration for outstanding traffic violations as acts or omissions relevant to best-interest analysis).

Balancing the above factors and viewing the evidence in the light most favorable to Mother, we conclude that the evidence is legally sufficient to support the trial court's finding that termination is in the best interest of the child. Further, in view of the entire record, we conclude the evidence to the contrary is not so significant as to prevent the trial court from forming a firm belief or conviction that termination is in the best interest of the child. Accordingly, we conclude the evidence is legally and factually sufficient to support the trial court's finding of best interest. We overrule Mother's fifth issue.

## CONCLUSION

Having overruled Mother's issues on appeal we affirm the trial court's final order of termination.

/s/    Jerry Zimmerer
        Justice

Panel consists of Chief Justice Christopher and Justices Zimmerer and Wilson.