**Affirmed and Memorandum Opinion filed November 26, 2024.**



In The

# Fourteenth Court of Appeals

### NO. 14-24-00486-CV

## IN THE INTEREST OF A.L., A CHILD

**On Appeal from the 315th District Court
Harris County, Texas
Trial Court Cause No. 2023-01394J**

## M E M O R A N D U M   O P I N I O N

C.G.J. ("Mother") appeals the trial court's final order terminating her parental rights to her minor daughter, A.L. The trial court terminated Mother's parental rights on predicate grounds of endangerment and failure to comply with the court-ordered service plan for reunification. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (O). The trial court further found that termination of Mother's parental rights was in the child's best interest. *See id.* § 161.001(b)(2). In three issues, Mother challenges the legal and factual sufficiency of the evidence to support the trial court's finding of endangerment, failure to comply with a court order, and its best interest

determination. We affirm.

## *Background*

Mother is the biological mother of A.L., and J. L. ("Father") is the biological father. Only Mother has filed an appeal.[1] Trial was held on May 13, 2024, and Mother was not present. Several exhibits, including the redacted emergency affidavit, Mother's court-ordered service plan, the permanency reports, the redacted child advocate reports, Mother's drug screening results, and Mother's criminal records, were admitted into evidence.

Several of Mother's drug screening results were admitted into evidence. In June 2023, Mother submitted to a drug screening, and her urine and hair follicle tests yielded negative results. In July 2023, Mother submitted to another drug screening. Her urine test yielded negative results, but her hair follicle test was positive for methamphetamine at a level of 4,116 pg/mg. Mother completed urine screenings in August 2023, September 2023, and October 2023, and each of the results yielded negative results. After not completing the required drug screenings in November 2023 and December 2023, Mother submitted to a drug screening in January 2024, which yielded a positive result for methamphetamine. Mother was supposed to submit to a drug screening in March 2024, but she did not appear. Because a sample was not collected, this test was considered a refusal/positive test.

Mother's court-ordered service plan was admitted into evidence. According to Mother's service plan, the Texas Department of Family and Protective Services (the "Department") was concerned about Mother's lack of compliance with taking

---

[1] The trial court also terminated Father's parental rights on predicate grounds of endangerment and failure to comply with the court-ordered service plan for reunification. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (O). Father does not challenge the trial court's final decree and is not a party to this appeal.

random drug screenings, lack of engagement/participation in services, and inability to provide safe and stable housing for the child. The Department was also concerned about Mother's protective capacity of the child because of the domestic violence allegations between Mother and Father. It was reported that Mother had completed some parenting classes, but her attendance was not consistent. Among other things, Mother's service plan required her to maintain a safe and stable home environment that is drug and alcohol free, provide proof of income, successfully complete parenting classes, participate in random urine drug screenings and hair follicle testing, complete a psychological evaluation, attend individual and family counseling, and complete a BIPP course for victims of domestic violence. Mother participated in some services but was not consistent.

The most recent permanency report prepared by the Department in May 2024 was admitted into evidence. According to the report, the child was one year old and meeting all of her developmental milestones. The primary permanency goal was unrelated adoption, and the concurrent permanency goal was family reunification. The report stated that Mother had been cooperative with the Department but needed to reengage in services and remain consistent. Among other requirements, the report stated that Mother was to participate in a psychological evaluation and adaptive functioning assessment, attend all court hearings and permanency planning meetings, make progress on her family services plan, maintain a safe and stable home environment, and participate in random urine and hair follicle testing.

Only two witnesses testified at trial: Nechole Walker and Missy Pacha. Walker was the conservatorship caseworker assigned to the case. She testified that the Department received a referral after Father had taken the child and refused to give Mother access. The Department was able to make contact with Mother and Father. After speaking with both parents, there were concerns raised about drug use,

criminal history, and domestic violence. The Department eventually gained custody of the child after Father was arrested. The Department determined that it would be unsafe to return the child to Mother because it was alleged that Mother was not able to provide stable housing, abused drugs, and had a criminal history. As a result of these concerns, the Department developed a service plan for Mother. Some of the requirements under the service plan were for Mother to keep in contact with the Department, document that she obtained safe and stable housing, document proof of employment, attend court hearings and permanency planning meetings related to the case, complete parenting classes, and demonstrate sobriety by submitting to random urine drug screenings and hair follicle testing.

Walker testified that Mother's contact with the Department was sporadic. Sometimes, Mother would keep in constant contact; other times, she would go a month or two without any contact. Mother did not provide any documentation regarding housing or employment. According to Walker, Mother stated that she was residing in a hotel that was being paid for with the help of friends. Additionally, Walker asserted that Mother did not maintain contact with the child, failed to attend all court hearings and permanency planning meetings, did not complete all the parenting classes, and failed to maintain sobriety. Mother did complete a psychological evaluation and adaptive functioning assessment but failed to follow any of the recommendations. Also, Mother failed to complete individual and family counseling or the BIPP course for victims of domestic violence as ordered. Walker testified that based on her interaction with Mother throughout the pendency of the case, the concerns that initially brought the child into care had not been alleviated. She requested that the child remain in her current foster placement where she is thriving and her needs are being met. Walker stated that the foster parents desired to adopt the child if parental rights were terminated.

On cross-examination, Walker acknowledged that Mother took some steps towards completing her court-ordered service plan. Mother moved away from Harris County to an area where she had the support of family and friends. Mother was also employed, albeit temporarily, and had a place of her own at one point. Despite a significant history of instability, Mother was trying. There were times that the Department was unable to contact Mother, but Mother did reengage in services. Mother was only two classes away from completing her parenting classes.

Pacha, the court-appointed child advocate, testified that she was appointed to the case in August 2023. It was her recommendation that Mother's rights be terminated because there was no evidence that Mother was complying with the service plan. She also asserted that Mother continued to use drugs and failed to establish stable housing or employment. According to Pacha, Mother expressed that the Department was expecting too much of her with little help or support. Pacha also testified that she met with the foster parents monthly and opined that they were a good fit for the child because they provided everything that parents should provide for their child.

During closing arguments, the Department requested that Mother's parental rights be terminated on predicate grounds (D), (E), (N), (O), and (P). The Department emphasized that Mother would continue to put the child at risk by maintaining a relationship with Father, despite a history of domestic violence. The Department also argued that Mother failed to comply with the service plan, lacked significant contact with the child, and demonstrated an inability to provide a safe and stable home environment. The attorney ad litem joined in the Department's request. Although the attorney ad litem acknowledged that it was difficult to escape an abusive relationship, she asserted that Mother failed to demonstrate any kind of protective factors necessary to protect the child. During closing arguments, Mother's

5

trial counsel argued that Mother's parental rights should not be terminated on predicate grounds (D) and (E) because Mother was a victim of domestic violence. However, Mother's trial counsel essentially conceded that Mother's parental rights should be terminated on predicate grounds (O) and (P).

At the conclusion of the trial, the trial court found that Mother knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered her physical or emotional well-being, engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the child's physical or emotional well-being, and failed to comply with the provisions of a court order establishing the actions necessary to obtain the return of her child. The trial court also found that termination of Mother's parental rights was in the child's best interest and therefore terminated her parental rights. The Department was appointed as sole managing conservator of the child.

### *Standards of Review*

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *In re I.L.G.*, 531 S.W.3d 346, 357–58 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). Although parental rights are of constitutional magnitude, they are not absolute. *Id.* (citing *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002)). The child's emotional and physical interests must not be sacrificed merely to preserve the parent's rights. *Id.* Because of the severity and permanency of terminating the parental relationship, Texas requires clear and convincing evidence to support such findings. *See* Tex. Fam. Code § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *In re J.F.C.*, 96 S.W.3d at 264. The burden of proof is upon

6

the party seeking deprivation of parental rights. *In re S.A.*, 665 S.W.3d 59, 70 (Tex. App.—Tyler 2022, pet. denied).

As discussed, Mother challenges the legal and factual sufficiency of the evidence supporting the trial court's endangerment findings and its best interest determination. In reviewing a legal sufficiency challenge under the clear and convincing evidentiary standard, we examine all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all contrary evidence that a reasonable factfinder could have disbelieved. *In re G.M.G.*, 444 S.W.3d 46, 52 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

In reviewing termination findings for factual sufficiency, we consider and weigh all the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. We give due deference to the factfinder's findings and do not substitute our judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam). As always, the trier of fact is the sole judge of witness credibility. *See In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014); *In re T.L.E.*, 579 S.W.3d 616, 626 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).

### *Endangerment*

As her first issue, Mother challenges the legal and factual sufficiency of the evidence to support the trial court's findings that termination is warranted under Family Code subsections 161.001(b)(1)(D) and (E). Under these provisions, courts

7

are authorized to terminate parental rights respectively if the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child" or "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code § 161.001(b)(1)(D), (E). Only one predicate finding under section 161.001 is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (per curiam).

Predicate findings under subsections D and E, however, pose significant collateral consequences. *See id.* at 234–35 (discussing section 161.001(b)(1)(M), which provides that a court may terminate a parent's rights if it finds, by clear and convincing evidence, that the parent has had their "parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E)."). In light of these consequences, we are required to consider the sufficiency of the evidence pursuant to subsections D or E when raised on appeal. *Id.* at 235; *see also, e.g., In re P.W.*, 579 S.W.3d 713, 721, 728 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

Both subsections D and E require proof of endangerment. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E). "Endanger" means to expose the child to loss or injury or to jeopardize the child's emotional and physical health. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam). A child is considered endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards. *J.S. v. Tex. Dep't of Family & Protective Servs.*, 511 S.W.3d 145, 159 (Tex. App.—El Paso 2014, no pet.). Endangerment encompasses "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family

environment." *In re M.C.*, 917 S.W.2d at 269. But, it is not necessary that the endangering conduct be directed at the child or that the child actually suffered injury. *Id.*

While both subsections D and E focus on endangerment, they differ regarding the source of the physical or emotional endangerment to the child. *See In re B.S.T.*, 977 S.W.2d 481, 484 (Tex. App.—Houston [14th Dist.] 1998, no pet.). For instance, subsection D focuses on the child's living environment, rather than the conduct of the parent, though parental conduct is certainly relevant to the child's environment. *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Whereas, subsection E focuses on the parent's conduct, which must be the result of a conscious course of conduct rather than a single act or omission. *Id.*

**Endangerment by conduct.** We will begin our analysis with the evidence relevant to the trial court's endangerment by conduct finding under section 161.001(b)(1)(E). Mother argues that the evidence is legally and factually insufficient to terminate her parental rights under subsection E because the primary evidence is limited to concerns leading up to the removal. However, we are cognizant that when determining whether a parent has engaged in an endangering "course of conduct," a factfinder may consider the parent's actions and inactions that occurred both before and after the child was born, and before and after the child has been removed by the Department. *See In re V.A.*, 598 S.W.3d 317, 331 (Tex. App.—Houston [14th Dist.] 2020, pet. denied).

Much of the evidence concerns Mother's drug use. Drug use and its effects on the parent's life and ability to parent may establish an endangering course of conduct. *J.O.A.*, 283 S.W.3d at 345; *V.A.*, 598 S.W.3d at 331 ("A parent's continuing substance abuse can qualify as a voluntary, deliberate, and conscious course of conduct endangering the child's well-being."); *In re A.A.M.*, 464 S.W.3d 421, 426

9

(Tex. App.—Houston [1st Dist.] 2015, no pet.) ("Illegal drug use creates the possibility that the parent will be impaired or imprisoned and thus incapable of parenting."). Continued illegal drug use after a child's removal is conduct jeopardizing parental rights and may be considered an endangering course of conduct. *V.A.*, 598 S.W.3d at 331 (citing *Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 253–54 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (en banc)). The factfinder may give "great weight" to the "significant factor" of drug-related conduct. *In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

At the onset of the investigation, the Department had concerns about Mother's drug use. In the court-ordered service plan, which was admitted into evidence without objection, Mother shared that she used molly and ecstasy in the past but denied any drug use while pregnant.[2] But, Mother revealed that she had reengaged in drug use at some point after the child's birth, which was corroborated by Mother's drug screening results. At the time of the first positive result, the child would have been approximately four months old. Mother tested positive again when the child would have been approximately ten months old, even though maintaining sobriety was necessary for the return of the child. Mother also completed a psychological evaluation in October 2023, which was admitted into evidence without objection.[3] At the time of the evaluation, Mother stated that she was not currently taking any drugs but did admit to taking "Xanax, X, and methamphetamines" two months before the interview. Two months prior to the evaluation, the child would have been approximately seven months old. Additionally, Walker testified that Mother failed

---

[2] Mother initially objected to certain language included in the court-ordered service plan but later withdrew her objection.

[3] As with the court-ordered service plan, Mother objected to the admission of the psychological evaluation but later withdrew her objection.

to appear at multiple scheduled drug screenings. From this, the trial court could have inferred that Mother's test results would have been positive if she had submitted to testing on the missed occasions. *See In re A.O.*, No. 05-21-00789-CV, 2022 WL 620631, at *7 (Tex. App.—Dallas Mar. 3, 2022, pet. denied) (mem. op.).

As factfinder, the trial court could give "great weight" to the "significant factor" of Mother's continued drug use before and after the child was removed and find it to be an endangering course of conduct. *V.A.*, 598 S.W.3d at 331; *L.G.R.*, 498 S.W.3d at 204. Under the applicable standards of review, we conclude that the evidence is legally and factually sufficient to support the trial court's predicate finding of endangerment under section 161.001(b)(1)(E). We therefore need not consider Mother's challenge to the evidence supporting a finding of endangerment under subsection D or failure to comply with the provisions of a court order under subsection O. *See, e.g.*, *In re P.W.*, 579 S.W.3d at 728.[4] We overrule Mother's first two issues.

### Best Interest

We now turn to Mother's third issue challenging the legal and factual sufficiency of the evidence to support the trial court's finding that termination was in the child's best interest. There is a strong presumption that the best interest of a child is served by keeping the child with a parent. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). The party requesting termination bears the heavy burden of rebutting that presumption. *See In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). No specific set of facts is required to establish that termination is in a child's best interest, but there are several

---

[4] Though we do not address the sufficiency of the evidence to support the trial court's finding that Mother failed to comply with the provisions of the court-ordered service plan, we note that Mother's trial counsel conceded that Mother did not complete her service plan.

nonexclusive factors that may guide the factfinder's best-interest determination. *See In re L.M.*, 572 S.W.3d 823, 837 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

These factors include: (1) the desires of the child; (2) the child's emotional and physical needs now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) any acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re E.R.W.*, 528 S.W.3d 251, 266 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also* Tex. Fam. Code § 263.307(b) (listing factors to consider in evaluating a parent's willingness and ability to provide a child with a safe environment). The same evidence used to establish grounds for termination under section 161.001(b)(1) may be probative in determining the best interest of the child. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

**The child's desires.** A.L. came into the Department's care when she was approximately three months old. At trial, Walker testified that Mother has not had any contact with her daughter since November 2023 because there was a no visitation order in place. Walker asserted that there were certain steps that Mother needed to complete to re-establish visitation, but Mother failed to complete the necessary steps. Due to the child's age, neither party has identified any evidence establishing that the child has expressed a specific desire to either to return to Mother's care or remain with her foster parents. However, there was evidence that the child was bonded with her foster parents. Even though the child was just

12

beginning to talk, she referred to her foster parents as "mama and dada."

**Emotional and physical needs.** There was evidence that Mother loved her child and could benefit from parenting classes. While Mother was not consistent with her court-ordered service plan, she was only two classes away from completing her parenting classes. But, there was also evidence that the foster parents had been taking care of the child's emotional, physical, and developmental needs for the entire time that the child was in the Department's care. The child was very bonded with her foster parents and considered them to be her mother and father. Additionally, the foster parents expressed a desire to adopt the child should parental rights be terminated.

**Emotional and physical danger.** A child's need for a safe and stable home is the paramount consideration in assessing the best interest of the child. *See* Tex. Fam. Code § 263.307(a) (providing that prompt and permanent placement of child in a safe environment is presumed to be in the child's best interest); *In re G.M.G.*, 444 S.W.3d 46, 60 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (providing that parent who lacks ability to provide the child with safe and stable home is unable to provide for the child's emotional and physical needs). Evidence of illegal drug use supports a finding that placement of the child with her parent poses a potential danger to the child. *See, e.g.*, *E.R.W.*, 528 S.W.3d at 266 ("Mother's history of drug abuse bespeaks a course of conduct that the fact finder reasonably could conclude endangers [child]'s well-being."). Additionally, evidence of violence in the home supports a finding that the placement of child with her parent is likely to subject the child to emotional and physical danger now and in the future. *In re J.S.-A.*, No. 01-17-00491-CV, 2018 WL 891236, at *8 (Tex. App.—Houston [1st Dist.] Feb. 15, 2018, pet. denied) (mem. op.); *In re O.N.H.*, 401 S.W.3d 681, 685 (Tex. App.—San Antonio 2013, no pet.) ("[I]t was a form of abuse for the children to be exposed to

13

an environment where physical abuse occurred even if it was not directed toward them.").

There was significant evidence that Mother had been using illegal drugs both before and after the child was born and before and after the child had been removed by the Department. *See V.A.*, 598 S.W.3d at 331. There was also evidence of violence in the home. Six months before the child was born, Father was charged with assaulting Mother and was later found guilty. Mother remained with Father, and nine months later, the child came into the Department's care after Father physically assaulted Mother again and absconded with the child to another state. *See In re J.T.*, No. 01-19-00908-CV, 2020 WL 1942463, at *9 (Tex. App.—Houston [1st Dist.] Apr. 23, 2020, pet. denied) (mem. op.) ("The evidence of the mother's . . . continued association with a violent boyfriend . . . bears on the emotional and physical danger to [the child] now and in the future."). There was not much evidence presented regarding Mother's continued relationship with Father after the child was removed, presumably because Father was in jail for a period of time.

**Parenting abilities.** A parent's inability to provide adequate care for her child, unstable lifestyle, lack of a home and income, lack of parenting skills, and poor judgment may be considered when looking at the children's best interest. *In re J.D.*, 436 S.W.3d at 119. There was not much evidence admitted concerning Mother's parenting abilities, although there was evidence that Mother acknowledged that she could benefit from parenting classes even though she did not consistently participate in services. The court-ordered service plan also required Mother to maintain a safe and stable home environment and provide proof of income. The conservatorship caseworker testified that Mother was unable to provide documentation establishing either requirement. The redacted child advocate reports stated that Mother had not demonstrated an understanding of the child's needs or

14

shown an ability to meet the child's needs because she resided in unstable hotel housing, lacked reliable transportation, and had an unstable lifetime work history. Notably, Mother did not appear at trial, which was a requirement to obtain return of the child.

**Programs available to assist.** There was little evidence in the record regarding programs available to those seeking custody. It is clear that Mother attempted to participate in services, but she was not consistent. Mother demonstrated a willingness to participate in parenting classes and was only two classes short of completion. She participated in a psychological evaluation but failed to follow any of the recommendations. Although Mother was required to participate in a drug and alcohol assessment, she failed to do so. Mother also did not maintain her sobriety.

**Plans for the child.** The factfinder may compare the contrasting plans for a child by the parent and the Department and consider whether the plans and expectations of each party are realistic or weak and ill-defined. *Id.* at 119–20 (citing *D.O. v. Tex. Dep't of Human Servs.*, 851 S.W.2d 351, 356 (Tex. App.—Austin 1993, no writ)). There was little evidence in the record concerning Mother's plans for the child, though she presumably wanted the child to be returned to her care. Mother did ask to set up visitation with the child, even though there was a no visitation order in place, and she sometimes requested updated pictures of the child. However, the child advocate testified that Mother never once asked about the child or showed concern for the child's well-being with her actions. There was evidence admitted at trial that the foster parents desired to adopt the child should parental rights be terminated. The child was very bonded with the foster parents' other children.

**Stability.** The stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in the children's best interest. *In re A.G.*, No. 14-18-01089-CV, 2019 WL 2385723, at *5

(Tex. App.—Houston [14th Dist.] June 6, 2019, pet. denied). Texas courts recognize that a child's need for permanence through the establishment of a "stable, permanent home" is a paramount consideration. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). Therefore, evidence about the present and future placement informs the best-interest determination. *See C.H.*, 89 S.W.3d at 28.

As part of her service plan, Mother was required to provide documentation regarding housing and employment, but she failed to do so. Mother did not testify at trial but had previously reported that she did not have reliable transportation. She also resided in a hotel and relied on friends for lodging expenses. Overall, Mother did not have much of a work history. On the other hand, there was evidence admitted at trial indicating that the foster parents were both consistently employed and parents to two other children. The foster parents also owned their own home and lived within walking distance of family support.

**Acts and omissions of the parent and any excuses.** Mother's relevant acts and omissions have largely already been discussed in detail above: the illegal drug use before and after the child was born, before the child had been removed by the Department, and afterwards when return of the child depended on her not using drugs; the failure to engage in services; and violence in the home with Father. Mother did not testify at trial or otherwise offer any excuses, but Mother did express to the court-appointed child advocate that the Department was expecting too much of her.

**Conclusion.** Reviewing the record, a reasonable factfinder could have formed a firm belief or conviction that termination was in the child's best interest. *See J.O.A.*, 283 S.W.3d at 344. It would have been reasonable for the trial court to conclude that Mother lacked the ability to provide a safe and stable environment and successfully parent the child. This is supported by evidence of Mother's persistent drug use, continued association with Father after he physically assaulted her, and

16

failure to engage in services necessary for the return of the child. Additionally, the evidence strongly suggests that the child is thriving in her current placement, and adoption appears to be the next logical step for the child. We overrule Mother's third issue challenging the sufficiency of the evidence to support the trial court's best interest finding under Family Code section 161.001(b)(2).

We affirm the judgment of the trial court terminating Mother's parental rights and appointing the Department as sole managing conservator of the child.


/s/    Frances Bourliot
        Justice



Panel consists of Chief Justice Christopher and Justices Bourliot and Wilson.