

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00093-CV

_____

IN THE INTEREST OF K.J., A CHILD

---

On Appeal from the 233rd District Court
Tarrant County, Texas
Trial Court No. 233-741048-23

---

Before Kerr, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Kerr

**MEMORANDUM OPINION**

Mother and Father appeal the termination of their parental rights to their child Kyle,[1] who was eighteen-months old during trial, and primarily raise sufficiency challenges to the trial court's termination findings. *See* Tex. Fam. Code Ann. § 161.001(b). Mother challenges the trial court's legal and factual sufficiency of the endangerment findings under Section 161.001(b)(1)(D) and (E) and its finding that termination of Mother's parental rights was in Kyle's best interest under (b)(2). *See id.* § 161.001(b)(1)(D), (E), (2). Father challenges the legal and factual sufficiency of the trial court's (D) and (E) endangerment findings, its constructive-abandonment finding under (N), and its finding that Father failed to comply with a court order under (O). *See id.* § 161.001(b)(1)(D), (E), (N), (O). Father also argues that the Department should be estopped from seeking termination based on his criminal history under (L). *See id.* § 161.001(b)(1)(L). We will affirm.

## I. Factual Background and Procedural History

In September 2023, a hospital notified the Texas Department of Family and Protective Services that Mother was pregnant, homeless, and had been using cocaine. The Department opened an investigation and met Mother in the hospital, where she

---

[1]We use the alias "Kyle" to identify the child and refer to his family members by their relation to him. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

had just given birth to Kyle.[2] Although Kyle did not test positive for drugs, Mother admitted to snorting cocaine in June when she was pregnant, and a report indicated that during prenatal visits she had tested positive three times for cocaine. Mother identified Father as Kyle's possible father because she said they had been snorting cocaine together and "messing around." The Department was concerned about Mother's neglectful supervision of Kyle. When the Department could not find a suitable kinship placement for Kyle, it filed a petition to place Kyle in its care, to reunite him with his parents, or—if reunification could not be achieved—to terminate Mother's and Father's parental rights.

Father initially refused to meet with the Department in November 2023, but he agreed to do so in March 2024. During that meeting, the Department asked about Father's criminal history, and he admitted to having prior convictions for transporting firearms and stealing cars. But Father did not say anything about his prior conviction for sexual assault of a ten year old, his lifetime requirement to register as a sex offender,[3] or his prior conviction for failing to register as a sex offender, all of which concerned the Department. Father initially denied being Kyle's father, but DNA testing confirmed otherwise.

---

[2] Mother has six other children, and her parental rights to three of those children were previously terminated.

[3] The State considers Father's reoffender risk level to be moderate.

The Department placed Kyle with a foster family and set up service plans for both Mother and Father. During the course of those plans, Mother attended only 24 of her 65 scheduled visits with Kyle, often staying for only five minutes before leaving; failed to take 13 out of 15 required drug tests; and tested positive for cocaine and morphine in 2024.[4] Father told the Department that as of June 2024, Mother was on the streets, "still in her habit," and not fit to care for Kyle. Mother acknowledged that she did not attend at least one visit with Kyle because "she wasn't going to go see [Kyle] while under the influence [of drugs]." The Department encouraged Mother to go to an inpatient drug-treatment program, but she never did. Mother was unable to show long-term employment and although she had maintained housing for over a year, she had become homeless by the time of trial.

As for Father, he continually smoked marijuana, testing positive in August 2024. He failed to maintain stable income or housing. In addition, he was unwilling to engage with the Department's service providers; attended only half of his 32 scheduled visits with Kyle, including attending while smelling like marijuana; and refused to meet with the Department in July 2024 about his family plan of service and never called to discuss it.

---

[4]The evidence at trial conflicted on whether Mother had tested positive once or twice. Testimony at trial reflected that at one test, Mother's urine was "too hot" to be tested. The Department's permanency report to the court states that Mother had twice tested positive for drugs. But Mother's 13 no-shows were presumed positive.

Neither parent completed a Department-requested psychological evaluation, and both refused individual counseling. Mother claimed she had overslept the counseling sessions, and Father simply refused, saying he would find his own counselor, which he never did.

Despite the Department's efforts to reunify Kyle with Mother and Father, the Department determined that termination was in Kyle's best interest and—after obtaining an extension from an initial August 2, 2024 trial setting to give the parents more time to work toward reunification—tried the case to the bench in February 2025. Neither Father nor Mother attended trial, but both were represented by appointed counsel.

The Department presented two witnesses who are permanency specialists with Our Community Our Kids, which provides case-management services for the Department. Both witnesses presented evidence of the above-stated facts, and the Department also offered evidence of Mother's and Father's criminal histories[5] and the Department's permanency report to the court regarding Kyle.

Mother and Father presented no witnesses. After all parties had rested, the appointed ad litem recommended that Mother's and Father's parental rights be

---

[5]Mother's criminal-history evidence showed her multiple felony drug-possession convictions involving both heroin and cocaine, a conviction for aggravated assault causing serious bodily injury, and a misdemeanor-assault conviction. Father's criminal-history evidence proved his convictions for sexual assault of a child and for failing to register as a sex offender.

terminated. Determining that termination was in Kyle's best interest, the trial court terminated both Mother's and Father's parental rights on grounds (D), (E), (N), and (O) and additionally Father's on ground (L) because of his prior child-sexual-assault conviction. *See id.* § 161.001(b)(1)(D), (E), (L), (N), (O), (2).

## II. Discussion

In her first two issues and in his first two points, Mother and Father attack the evidentiary sufficiency of the trial court's endangerment findings under grounds (D) and (E). *See id.* § 161.001(b)(1)(D), (E). We uphold the trial court's findings as to each parent.

### A. Burden of Proof and Standard of review

#### 1. Generally

In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except the child's right to inherit. *Id.* § 161.206(b); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, "[w]hen the State seeks to sever permanently the relationship between a parent and a child, it must first observe fundamentally fair procedures." *In re E.R.*, 385 S.W.3d 552, 554 (Tex. 2012) (citing *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S. Ct. 1388, 1391–92 (1982)).

Termination decisions must be supported by clear and convincing evidence. *See* Tex. Fam. Code Ann. §§ 161.001(b), .206(a); *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex.

6

2012). Due process demands this heightened standard because "[a] parental[-]rights termination proceeding encumbers a value 'far more precious than any property right.'" *E.R.*, 385 S.W.3d at 555 (quoting *Santosky*, 455 U.S. at 758–59, 102 S. Ct. at 1397). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *E.N.C.*, 384 S.W.3d at 802.

For a trial court to terminate a parent–child relationship, the party seeking termination must establish, by clear and convincing evidence, that (1) the parent's actions satisfy just one of the many predicate grounds that are listed in Family Code Section 161.001(b)(1), and (2) termination is in the child's best interest under Section 161.001(b)(2). Tex. Fam. Code Ann. § 161.001(b)(1), (2); *E.N.C.*, 384 S.W.3d at 803; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).

Regarding Subsection 161.001(b)(1) grounds, the supreme court has articulated an important qualification: if the trial court finds grounds under Subsection (b)(1)(D) or (E)—both of which involve endangering a child's physical or emotional well-being—an appellate court must review the (D) or (E) grounds on appeal because they have potential collateral consequences for other children the parent may have. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(M) (providing that a prior termination under (D) or (E) is a ground for terminating parental rights to a different child); *In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) ("[I]f a court of appeals affirms the termination on either [(D) or (E)] grounds, it must provide the details of its analysis."). Termination

7

may not be based solely on the child's best interest as determined by the factfinder under Section 161.001(b)(2). *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re C.D.E.*, 391 S.W.3d 287, 295 (Tex. App.—Fort Worth 2012, no pet.).

### 2. Legal sufficiency

In evaluating the evidence for legal sufficiency in parental-termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the Department proved both the particular ground for termination and that termination is in the child's best interest. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *see In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We review all the evidence in the light most favorable to the finding and judgment, and we resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so. *J.F.C.*, 96 S.W.3d at 266. We also must disregard all evidence that a reasonable factfinder could have disbelieved, in addition to considering undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *See id.* In doing our job, we cannot weigh witness-credibility issues that depend on the witness's appearance and demeanor; that is the factfinder's province. *J.P.B.*, 180 S.W.3d at 573. And even when credibility issues appear in the appellate record, we defer to the factfinder's determinations as long as they are not unreasonable. *Id.*

### 3. Factual sufficiency

We must perform "an exacting review of the entire record" in determining whether the evidence is factually sufficient to support terminating a parent–child relationship. *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). In a factual-sufficiency review, we give due deference to the factfinder's findings and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated an alleged ground and that termination is in the child's best interest. Tex. Fam. Code Ann. § 161.001(b); *see In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

## B. Grounds under (D) and (E)

### 1. Law

"Endanger" means to expose to loss or injury, or to jeopardize a child's emotional or physical health. *Boyd*, 727 S.W.2d at 533; *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). The parent's conduct need not be directed at the child nor must the child actually suffer injury in order to be endangered within the statute's meaning. *J.T.G.*, 121 S.W.3d at 125.

Under (D), we examine evidence related to the child's environment to determine if that environment endangered the child's physical or emotional well-being. Tex. Fam. Code Ann. § 161.001(b)(1)(D); *J.T.G.*, 121 S.W.3d at 125. A parent's conduct in the home can create an environment endangering a child's physical and emotional well-being. *J.T.G.*, 121 S.W.3d at 125.

Under (E), we ask whether evidence exists that the parent had engaged in conduct or had knowingly placed the child with someone who had engaged in conduct—including acts, omissions, or failures to act—that endangered the child's physical or emotional well-being. Tex. Fam. Code Ann. § 161.001(b)(1)(E); *J.T.G.*, 121 S.W.3d at 125. Additionally, (E) requires not just a single act or omission but rather a voluntary, deliberate, and conscious course of conduct. *J.T.G.*, 121 S.W.3d at 125.

### 2. Analysis

We may conduct a consolidated review of (D) and (E) grounds when the evidence pertaining to both is interrelated, as it is here. *See In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g).

**a. Drug use.** Illegal drug use, including during pregnancy and the pendency of a termination suit, can support a charge that a parent has engaged in conduct that endangers the physical and emotional welfare of the child. *In re Z.J.*, No. 02-19-00118-CV, 2019 WL 6205252, at *11 (Tex. App.—Fort Worth Nov. 21, 2019, pet. denied)

(mem. op.); *In re K.C.F.*, No. 01-13-01078-CV, 2014 WL 2538624, at *10 (Tex. App.—Houston [1st Dist.] June 5, 2014, no pet.) (mem. op.).

Here, Mother and Father snorted cocaine together before Kyle was born. And although Mother argues "there was no evidence that she continued to use after knowing she was pregnant," she tested positive three times during her prenatal visits, so she knew she was using drugs while pregnant.[6]

Mother had drug-possession convictions from 2007 and 2017 and had been to rehab in 2009, but she had relapsed. After Kyle's birth, Mother said she would again go to rehab—even showing the caseworker her packed bags—but she never went. Instead, Mother continued using drugs. The Department requested that Mother take drug tests, and Mother simply failed to take the majority of those tests, which were presumed positive as the Department had warned Mother. And for the two she took, she at least once tested positive for both cocaine and morphine.[7] She also knowingly skipped at least one parent–child visit with Kyle because she had been using drugs.

---

[6]Mother also argues that Kyle did not test positive for drugs and there was no evidence that Kyle experienced withdrawal symptoms, but the absence of such evidence does not negate that Mother's knowing drug use before, during, and after her pregnancy endangered Kyle. *See Z.J.*, 2019 WL 6205252, at *11.

[7]As we pointed out above, the evidence conflicts as to whether Mother had tested positive once and had a too-hot urine sample the other time or had twice tested positive. Either way, the evidence demonstrates Mother's knowing use of drugs during her pregnancy and the termination proceedings, which supports the trial court's endangerment findings. *See H.R.M.*, 209 S.W.3d at 108; *J.F.C.*, 96 S.W.3d at 266.

As for Father, in addition to using cocaine with Mother before Kyle's birth, Father used marijuana during the termination proceedings, including testing positive in August 2024. In fact, a caseworker testified that Father smelled like marijuana during his parent–child visits with Kyle. Father did not think Kyle should be around Mother because of her "habit," but neither parent demonstrated an ability or willingness to stop using drugs.

In sum, both parents' unabated drug use before and after Kyle's birth supports the trial court's endangerment findings. *See Z.J.*, 2019 WL 6205252, at *11; *K.C.F.*, 2014 WL 2538624, at *10; *see also In re S.N.*, 272 S.W.3d 45, 62 (Tex. App.—Waco 2008, no pet.) (stating that a parent's history of substance abuse and an inability or unwillingness to admit to having such a problem can support an endangerment finding).

**b. Criminal history.** "Evidence of criminal conduct, convictions, imprisonment, and their effects on a parent's life and ability to parent" may be used to establish endangerment. *In re J.B.*, No. 14-20-00766-CV, 2021 WL 1683942, at *5 (Tex. App.—Houston [14th Dist.] Apr. 29, 2021, pet. denied) (mem. op.); *see also In re M.L.L.*, 573 S.W.3d 353, 363 (Tex. App.—El Paso 2019, no pet.). "Allowing a child to have contact with a registered sex offender is endangering conduct by the parent." *In re B.A.M.*, No. 01-22-000048-CV, 2022 WL 2513477, at *8 (Tex. App.—Houston [1st Dist.] July 7, 2022, no pet.) (mem. op.).

12

Mother's criminal-history evidence showed multiple drug-possession convictions involving both heroin and cocaine, a conviction for aggravated assault causing serious bodily injury, and a misdemeanor-assault conviction. Although Mother said that she had been sober for a number of years following her 2007 drug-possession convictions, she had another drug-possession conviction in 2017 and was using illegal drugs during and after her pregnancy with Kyle. Mother's criminal history for drug crimes, coupled with her using again and refusing to attempt sobriety, as well as her 2017 and 2023 assault convictions, support the trial court's endangerment findings.[8] *See J.B.*, 2021 WL 1683942, at *5; *M.L.L.*, 573 S.W.3d at 363.

Concerning Father, although he had told the Department about his convictions for transporting firearms and stealing cars, the Department's primary concern was his lack of candor about his convictions for sexual assault of a child and for later failing to register as a sex offender. Father argues that his sex-crime convictions were "remote" and "totally unrelated to [his] obligation to ensure his son's safety." But on this argument, we agree with the Fourteenth District Court of Appeals' reasoning:

> While termination may not be based solely on conditions that existed in the distant past but no longer exist, the dispositive inquiry is whether the past continues to bear on the present. *See In re S.G.*, No. 01-18-00728-CV, 2019 WL 1448870, at *9 (Tex. App.—Houston [1st Dist.] Apr. 2,

---

[8]Mother argues that the evidence of endangerment was insufficient because her most recent drug conviction was eight years before trial and she was not arrested or incarcerated while pregnant with Kyle or during the pendency of the termination proceeding. But a trial court's endangerment finding does not require evidence that a parent also be arrested or convicted for that parent's illegal drug use.

2019, [pets. denied]) (mem. op.). Father's conviction for indecency with a child requires him to register as a sex offender. *See* Tex. Code Crim. Proc. [Ann.] arts. 62.001(6)(A), 62.101(a)(1). In requiring lifetime registration, the [Texas] Legislature has made a policy decision that the crime for which Father was convicted will never be so remote that it will no longer be a matter of legitimate public concern. *See . . . S.G.*, 2019 WL 1448870[,] at *9 (citing *Young v. State*, 341 S.W.3d 417, 426 (Tex. Crim. App. 2011) (concern about repeat sex offenses and desire to thwart future sex crimes underlies registration requirement)).

*In re T.L.E.*, 579 S.W.3d 616, 625–26 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). The evidence of Father's prior convictions for sexual assault of a child and for failing to register as a sex offender supports the trial court's endangerment findings.[9] *See id.*; *see also J.B.*, 2021 WL 1683942, at *5; *M.L.L.*, 573 S.W.3d at 363.

    **c. Mental-health issues.** "A parent's mental health is frequently considered in reviewing the sufficiency of the evidence under endangerment grounds." *In re J.P.-L.*, 592 S.W.3d 559, 583 n.26 (Tex. App.—Fort Worth 2019, pet. denied). Mother had a number of mental-health issues, but she refused to take prescription medications, claiming they made her "feel high like cocaine and heroin"; but ironically and unfortunately, she instead self-medicated with those very substances. Neither Mother nor Father—both of whom were using drugs—completed a psychological evaluation,

---

    [9]The record also reflects that after Kyle's birth, Mother continued to associate with Father, a registered sex offender; Mother's association with a sex offender also supports the trial court's endangerment findings as to Mother. *See In re C.C.*, Nos. 07-15-00185-CV, 07-15-00220-CV, 2015 WL 5766513, at *4–5 (Tex. App.—Amarillo Sept. 29, 2015, no pet.) (mem. op.) (holding that parent's lifestyle, which included dating registered sex offender, constituted a conscious course of endangering conduct).

14

and both refused individual counseling that the Department offered. The evidence of both parents' failures to address their respective mental-health issues supports the trial court's endangerment findings. *See id.*; *see also In re S.R.*, 452 S.W.3d 351, 365 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (stating that a factfinder may consider evidence of a parent's failure to comply with services to improve mental health in making endangerment findings).

**d. Failure to provide stable housing and income.** Evidence that a parent has failed to provide stable housing and income is evidence of endangerment. *In re T.S.*, No. 02-10-00089-CV, 2010 WL 4486332, at *8 (Tex. App.—Fort Worth Nov. 10, 2010, no pet.) (mem. op.); *see also In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) ("[C]onduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child."). Here, both parents had failed to maintain stable housing and were homeless at the time of trial and had shown no ability to provide financial stability. Such evidence supports the trial court's endangerment findings. *See T.S.*, 2010 WL 4486332, at *8; *R.W.*, 129 S.W.3d at 739.

**e. Failure to cooperate with the Department.** Also as part of the endangerment analysis, a court may consider a parent's failure to complete a service plan, to attend parent–child visits, and to cooperate with the Department. *See In re G.G.-H.*, No. 05-23-00437-CV, 2023 WL 6225410, at *2 (Tex. App.—Dallas Sept. 22, 2023, no pet.) (mem. op.); *In re A.R.M.*, 593 S.W.3d 358, 371 (Tex. App.—Dallas

2018, pet. denied). Further, a parent's lack of significant contact with a child may endanger the child's physical or emotional well-being. *In re A.J.D.*, No. 02-13-00183-CV, 2013 WL 5781478, at *4 (Tex. App.—Fort Worth Oct. 24, 2013, no pet.) (mem. op.).

Here, Mother attended only 24 of her 65 scheduled parent–child visits—attending many visits for only five minutes before leaving—and admitted to not attending at least one visit because she was under the influence of drugs. Father attended 16 of his 32 scheduled parent–child visits, but he often did so while smelling of marijuana. Although Mother met with the Department about its plan for her reuniting with Kyle, Mother did not go to rehab, refused counseling, failed to complete a psychological evaluation, refused or no-showed for drug testing, and was uncooperative. The Department gave Father multiple service plans, but he said he did not have time—and never made the time—to go into plan details with the Department.[10] Neither parent substantially complied with nor successfully completed

---

[10]Father admits that he "was an absent parent[—]no more, no less"—but claims that such behavior did not endanger Kyle. Although failing to account for his other endangering evidence—such as his drug use and prior sex crime—the evidence of Father's admitted absenting himself from Kyle's life also evidenced endangering conduct toward Kyle's physical and emotional well-being. *See In re S.M.*, No. 02-23-00079-CV, 2023 WL 4501821, at *7 (Tex. App.—Fort Worth July 13, 2023, no pet.) (mem. op.) (characterizing evidence of parental absenteeism as endangering conduct); *In re T.J.*, No. 05-22-00954-CV, 2023 WL 1988838, at *8 (Tex. App.—Dallas Feb. 14, 2023, no pet.) (mem. op.) ("[A] parent's 'prolonged lack of contact or absence from a child's life qualifies as endangering conduct.'" (quoting *In re A.J.A.D.*, No. 01-22-00521-CV, 2022 WL 17813763, at *7 (Tex. App.—Houston [1st Dist.] Dec. 20, 2022, pet. denied) (mem. op.))).

each's respective service plan. Each parent's lack of cooperation with the Department and individual failures to comply with or complete each's service plan supports the trial court's endangerment findings. *See G.G.-H.*, 2023 WL 6225410, at \*2; *A.R.M.*, 593 S.W.3d at 371; *A.J.D.*, 2013 WL 5781478, at \*4.

In sum, the trial court considered the evidence, including testimony from the Department's witnesses, and was entrusted with weighing their credibility, and we cannot second-guess those decisions. *See In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021) (holding that an appellate court must defer to a trial court's factual determinations, even in parental-termination cases). Based on the record and the deference we must pay to the factfinder's determinations related to credibility, the trial court could have found by clear and convincing evidence that Mother and Father had each endangered Kyle—by each's course of conduct and creating an environment for Kyle that threatened his well-being. We thus hold that the evidence is both legally and factually sufficient to support the trial court's findings of statutory grounds under subsections (D) and (E) for Mother and Father. *See Spurck v. Tex. Dep't of Fam. & Protective Servs.*, 396 S.W.3d 205, 222 (Tex. App.—Austin 2013, no pet.); *see also N.G.*, 577 S.W.3d at 237 n.1. We overrule Mother's first and second issues and Father's first and second points.

## C.    Best-Interest Finding

Father does not challenge the evidentiary sufficiency to support the trial court's best-interest finding, but Mother does in her third issue. We hold the evidence is legally and factually sufficient to support the best-interest finding as to Mother.

### 1. Law

Although we generally presume that keeping a child with a parent is in the child's best interest, *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006), the best-interest analysis is child-centered, focusing on the child's well-being, safety, and development, *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). Evidence probative of a child's best interest may be the same evidence that is probative of a Subsection (b)(1) ground. *In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013); *C.H.*, 89 S.W.3d at 28; *see* Tex. Fam. Code Ann. § 161.001(b)(1), (2). We also consider the evidence in light of nonexclusive factors that the factfinder may apply in determining the child's best interest:

(A)   the [child's] desires . . . ;

(B)   the [child's] emotional and physical needs[,] . . . now and in the future;

(C)   the emotional and physical danger to the child now and in the future;

(D)   the parental abilities of the individuals seeking custody;

(E)   the programs available to assist these individuals to promote the [child's] best interest . . . ;

(F)   the plans for the child by these individuals or by the agency seeking custody;

18

(G) the stability of the home or proposed placement;

(H) the [parent's] acts or omissions . . . indicat[ing] that the existing parent–child relationship is not a proper one; and

(I) any excuse for the [parent's] acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (citations omitted); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best-interest finding, "we consider, among other evidence, the *Holley* factors" (footnote omitted)); *E.N.C.*, 384 S.W.3d at 807.

These factors are not exhaustive, and some listed factors may not apply to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient to support a finding that termination is in the child's best interest. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.*

### 2. Evidence and Analysis

As a starting point for analyzing Mother's best-interest evidentiary challenge, we observe that Mother did not raise a legal- or factual-sufficiency challenge to the trial court's ground (O) predicate finding. Unchallenged predicate-ground findings are binding and can support the best-interest finding. *In re C.V.*, 531 S.W.3d 301, 305 (Tex. App.—Amarillo 2017, pet. denied); *see C.H.*, 89 S.W.3d at 28 (stating that the same evidence may be probative of a termination ground and the best-interest finding); *see also In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) ("Many of the reasons

19

supporting termination under [S]ubsection O also support the trial court's best-interest finding."). "[W]hen a parent does not try to abide by the plan, the factfinder may reasonably infer the parent is indifferent to the goal of family reunification." *In re A.J.D.-J.*, 667 S.W.3d 813, 824 (Tex. App.—Houston [1st Dist.] 2023, no pet.).

In weighing the *Holley* factors, the evidence strongly shows a history of acts and omissions indicating that the existing parent–child relationship was not a proper one and that Mother was not able to provide for Kyle's current or long-term emotional and physical needs. *See* 544 S.W.2d at 372. Mother used cocaine and "mess[ed] around" with a registered sex offender and knowingly used cocaine while pregnant with Kyle. Even as she faced the termination of her parental rights, Mother abused cocaine and morphine, and despite what she said about wanting to go to rehab, she refused to do so. Compounding her untreated mental-health issues, for which she refused to take her prescribed medications and self-medicated with illegal drugs, she refused treatment for using those illegal drugs—all of which contributed to her erratic behavior.

The Department offered a number of programs to assist Mother with Kyle, but as we noted, Mother failed to comply with numerous, material portions of her service plan that were intended to address her ability to care for Kyle's present and future physical and emotional needs. *See id.* This includes her failure to stop using illegal drugs, refusal to go to rehab, inability to maintain stable income and housing, failure

to take a psychological evaluation, failure to attend individual counseling sessions, and failure to complete her services.

Although the Department scheduled 65 visits with Kyle, Mother missed two-thirds of them and left early from many of the ones she attended. At least once, she prioritized using drugs over visiting Kyle. During the few visits she did attend, Kyle did not recognize Mother and cried. Mother had no reason for her failures to comply with her service plan. *See id.*

In contrast, Kyle's foster family was "adoption motivated" and provided a safe, stable environment for him, and Kyle was "extremely loving with" and "very bonded with [his] foster mom." Thus, the Department offered evidence showing the stability of its proposed placement and plans for Kyle. *See id.*; *see also In re E.M.*, No. 11-24-00310-CV, 2025 WL 1240792, at *10 (Tex. App.—Eastland Apr. 30, 2025, no pet. h.) (mem. op.) ("When children are too young to express their desires, the factfinder may consider whether the children have bonded with their caregivers, are well-cared for by them, and whether the children have spent minimal time with a parent.").

Not only did Mother fail to show up to visit Kyle, she failed to attend trial to fight for her parental rights. *See In re T.C.*, No. 02-19-00291-CV, 2019 WL 6606172, at *9–10 (Tex. App.—Fort Worth Dec. 5, 2019, pet. denied) (mem. op.) (affirming best-interest finding and noting that mother did not appear at trial). By nearly every measure, despite Mother's expressed love for Kyle, Mother failed to demonstrate that she could or would make the necessary changes to her lifestyle to prioritize and

provide for Kyle's well-being, safety, and development. *See A.C.*, 560 S.W.3d at 631. And this is now the fourth time Mother has failed to demonstrate a determination to change concerning the youngest of her seven children. *See In re J.A.R.*, 696 S.W.3d 245, 257 (Tex. App.—Houston [14th Dist.] 2024, pet. denied) (holding that parents' years of drug use, extensive criminal history, and history with the Department supported the trial court's best-interest finding); *In re S.E.S.*, No. 04-17-00847-CV, 2018 WL 2418446, at *4 (Tex. App.—San Antonio May 30, 2018, pet. denied) (mem. op.) ("Courts have recognized that prior terminations are relevant in determining whether a parent's rights to the child at issue should be terminated.").

Considering the record as a whole, we hold that the *Holley* factors weigh against Mother and further hold that a reasonable factfinder could form a firm belief or conviction that termination of Mother's parental rights was in Kyle's best interest and that the evidence was therefore both legally and factually sufficient to support the trial court's best-interest finding concerning Mother. *See* Tex. Fam. Code Ann. § 161.001(b)(2); *C.H.*, 89 S.W.3d at 25. We overrule Mother's third issue.[11]

---

[11]Because Father does not challenge the trial court's best-interest finding, we do not address the sufficiency of the evidence to support this finding as to Father. *See* Tex. R. App. P. 47.1; *In re M.H.*, No. 02-24-00426-CV, 2024 WL 5083193, at *4 n.9 (Tex. App.—Fort Worth Dec. 12, 2024, no pet.) (mem. op.).

### III. Conclusion

Having overruled Mother's first, second, and third issues and Father's first and second points, which are dispositive of their respective appeals,[12] we affirm the trial court's "Order of Termination."

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: June 5, 2025

---

[12]We have affirmed the trial court's ground (D) and (E) findings, so we need not address Father's points challenging the evidentiary sufficiency of its (N) and (O) findings or his point arguing that the Department should be estopped from having sought termination under ground (L). *See* Tex. R. App. P. 47.1; *N.G.*, 577 S.W.3d at 237 n.1; *In re E.A.*, No. 02-24-00535-CV, 2025 WL 1085189, at *10 (Tex. App.—Fort Worth Apr. 10, 2025, pet. filed) (mem. op.).